UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                           :
SHARON WHARTON,                            :        CASE NO. 1:07-CV-2570
                                           :
             Plaintiff,                    :
                                           :
vs.                                        :        OPINION & ORDER
                                           :        [Resolving Doc. Nos. 33, 34]
THE GORMAN-RUPP COMPANY,                    :
                                           :
             Defendant.                    :
                                           :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Defendant Gorman-Rupp Company ("Gorman-Rupp") has filed a motion for summary judgment as to all claims raised by Plaintiff Sharon Wharton ("Wharton"). [Doc. 33.] The Defendant has also filed a motion to dismiss all state law claims in this case. [Doc. 34.] Plaintiff Wharton opposes both of these motions. [Docs. 37, 38.]

    For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion for summary judgment. The Court **DENIES** the Defendant's motion to dismiss.

## I. Background

    Plaintiff Sharon Wharton has been employed in a variety of administrative support positions at Defendant Gorman-Rupp Company since 1997. [Doc. 1 at 4.] She currently works as an Engineering Coordinator. *Id.* The Plaintiff says that she has been subjected to a sexually hostile work environment throughout her career at Gorman-Rupp and that Lee Wilkins, the Vice President of Human Resources at Gorman-Rupp, has repeatedly made inappropriate sexual comments to her.

-1-

Case No. 1:07-CV-2570
Gwin, J.

[Doc. 1 at 4-5.]

On September 21, 2005, the Defendant announced that there was a job opening for an Executive Administrative Assistant to work for the Board of Directors at Gorman-Rupp. [Doc. 1 at 5.] Plaintiff Wharton, who was then 58 years old, applied for the position. [Wharton Aff., Doc. 38-1 at 1.] The following month, a committee of Gorman-Rupp executive officers, including Robert Kirkendall, William Danuloff, Judith Sovine, and Lee Wilkins, interviewed the Plaintiff for the job. *Id.* On December 23, 2005, Wilkins told the Plaintiff that she was not chosen for the job, despite the fact that she had performed well at the interview.  Wilkins allegedly informed the Plaintiff, "We were looking down the road, we wanted longevity" and purportedly asked the Plaintiff how much longer she had to work before she could retire.  *Id.*  When the Plaintiff asked what criteria the committee used to make its hiring decision, Wilkins allegedly responded, "[W]e were looking down the road and we went with a younger person."  *Id.* at 2.  Susie Beckwith, a 49-year old Gorman-Rupp employee who was similarly not selected for the Executive Administrative Assistant position, also says that Wilkins told her that she did not receive the job because the Defendant was looking for an employee "with longevity." [Beckwith Dep., Doc. 39-4 at 11.]

On January 18, 2006, the Defendant publicly announced that another Gorman-Rupp employee, Sherri Green ("Green"), had been selected to fill the Executive Administrative Assistant position. [Wharton Aff., Doc. 38-1 at 2.] Green was 31 years old at the time that she was hired for the position. [Green Dep., Doc. 39-3 at 7, 13.]  Plaintiff Wharton alleges that she suffered emotional problems after she did not obtain the new job. [Wharton Aff., Doc. 38-1 at 2-4.]

In February 2006, the Plaintiff informed Wilkins that she was having emotional difficulties after the decision to hire another employee to fill the executive assistant position.  [Wharton Aff.,

Case No. 1:07-CV-2570
Gwin, J.

Doc. 38-1 at 2.]  Gorman-Rupp Human Resources Vice President Wilkins advised the Plaintiff to seek confidential counseling through the Defendant's Employee Assistance Program ("EAP") at the New Directions Counseling Center.  *Id.*  Plaintiff Wharton then sought such counseling.  On April 28, 2006, the Plaintiff told Wilkins that she was receiving counseling services from the EAP and said that her counselor believed that many of her emotional problems resulted from age-related issues.  *Id.*  Wilkins then allegedly asked for the name of her counselor and told at least one other Gorman-Rupp employee, Cheryl Pfeifer ("Pfeifer"), that the Plaintiff had sought counseling. [Wilkins Dep., Doc. 39-2 at 46-47.]  Wilkins admits that he knew that Pfeifer, the Benefits Manager for the Defendant, planned to contact the Plaintiff's counselor to discuss whether the Plaintiff intended to file an age discrimination lawsuit against Defendant Gorman-Rupp Company.  *Id.* at 48.

On May 2, 2006, Pfeifer called the director of the Employee Assistance Program, Dr. Blake Wagner ("Wagner"), during one of the Plaintiff's counseling sessions.  Pfeifer sought information as to whether the Plaintiff's counselor, Judith Williams, had advised the Plaintiff to sue the Defendant.  [Wharton Aff., Doc. 38-1 at 3; Pfeifer Dec., Doc. 33-8 at 1-2.]  Dr. Wagner says that the Plaintiff gave him oral permission to tell Pfeifer that her counselor was not giving her legal advice.  [Wagner Dep., Doc. 39-15 at 17.]  The Plaintiff, however, then changed her mind and refused to sign a written release authorizing the disclosure of her confidential communications with her counselor.  *Id.* at 23; Wharton Aff., Doc. 38-1 at 3. As Dr. Wagner was on the telephone with Pfeifer, Plaintiff Wharton informed him that she felt her privacy had been violated and that she would not return to the counseling program. [Wharton Aff., Doc. 38-1 at 3.]

In December 2006, the Plaintiff complained to Jeffrey Gorman, the President and CEO of Defendant Gorman-Rupp Company, about this series of events and informed him that she believed

Case No. 1:07-CV-2570
Gwin, J.

she had been discriminated against on the basis of age.  [Wharton Aff., Doc. 38-1 at 4.] Gorman conducted a meeting with the Plaintiff, Wilkins, and Dr. Wagner to discuss the Plaintiff's grievances.  President Gorman allegedly chastised Wilkins for revealing that the Plaintiff was in counseling to other employees.  *Id.*  The Plaintiff says that Gorman promised to address her age discrimination concerns, but he never did.  *Id.*

On June 5, 2007, Plaintiff Wharton's attorney wrote a letter to the Defendant stating that she was considering filing a lawsuit for age discrimination and invasion of privacy. [Wharton Aff., Doc. 38-1 at 4.]  The Plaintiff's lawyer also told the Defendant about the purported sexual harassment by Wilkins.  During this period, Wilkins allegedly called the Plaintiff a derogatory name in public and acted angrily towards her.  *Id.* at 4-5.  Another Gorman-Rupp employee, Scott Heslep, testified that he overheard Wilkins swear at the Plaintiff.  [Heslep Aff., Doc. 39-13 at 1.]  The Plaintiff also says that her current supervisor, Craig Redmond, constantly criticizes her work performance because she has filed suit against the Defendant.  [Wharton Aff., Doc. 38-1 at 4-5.]

On June 28, 2007, the Defendant gave a performance deficiency notice to the Plaintiff. During her ten years of employment with the Defendant, this was the first performance deficiency notice that the Plaintiff received. [Wharton Aff., Doc. 38-1 at 4.] The notice stated that Plaintiff Wharton would not receive a full salary increase because of numerous performance factors, including attendance deficiencies.  *Id.*  The Plaintiff had accrued several absences from work between August 2006 and March 2007 due to health conditions, including shingles and vision complications arising out of a heart attack or stroke.  [Wharton Aff., Doc. 38-1 at 4.] At the time of these absences, the Plaintiff did not designate the leave as Family and Medical Leave Act ("FMLA") leave, but the Defendant has since retroactively classified the January and March 2007 absences as

Case No. 1:07-CV-2570
Gwin, J.

unpaid, protected FMLA leave. *Id.* at 4; Wilkins Dec., Doc. 33-7 at 1-2. With regard to a separate

claim, the Plaintiff also says that she often worked many overtime hours between August 2005 and

May 2007, but was never paid for this overtime. [Wharton Aff., Doc. 38-1 at 5-6.]

On August 23, 2007, Plaintiff Wharton filed the present lawsuit against Defendant Gorman-

Rupp Company and several of its employees, Kirkendall, Danuloff, Sovine, Wilkins, and Pfeifer.

[Doc. 1.] In her complaint, the Plaintiff raises state law claims against the Defendants for (1) age

discrimination; (2) retaliation for complaining about age discrimination; (3) retaliation for

complaining about sex discrimination; and (4) two claims for invasion of privacy. *Id.* The Plaintiff

also brings two federal claims for (1) discrimination in violation of the Family and Medical Leave

Act; and (2) failure to pay overtime in violation of the Fair Labor Standards Act of 1938. *Id.*

On February 4, 2008, the Defendants filed a joint motion for summary judgment as to all of

the Plaintiff's claims and also filed a motion to dismiss the Plaintiff's state law claims for lack of

jurisdiction. [Docs. 33, 34.] On February 18, 2008, the Plaintiff opposed both motions. [Docs. 37,

38.] On February 25, 2008, the Defendant replied in support of its motions. [Docs. 41, 42.] With

the Court's permission, Plaintiff Wharton also filed a surreply to the Defendant's summary judgment

motion on March 3, 2008. [Doc. 46.]

On February 18, 2008, Plaintiff Wharton filed a joint proposed stipulation to dismiss without

prejudice all claims against Defendants Kirkendall, Danuloff, Sovine, Wilkins, and Pfeifer. [Doc.

36.] On February 20, 2008, the Court approved this stipulation and the Gorman-Rupp Company is

the sole remaining Defendant in this case. [Doc. 40.]

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no

Case No. 1:07-CV-2570
Gwin, J.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). "A fact is material if its resolution will affect the outcome of the lawsuit." *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P.56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita,* 475 U.S. at 587-88. "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987); *see also Celotex,* 477 U.S. at 322. Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether

Case No. 1:07-CV-2570
Gwin, J.

it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v.*

*All-Lock Co., 96 F.3d 174, 178 (6th Cir. 1996)* (internal quotations omitted).

### III. Discussion

#### A. The Plaintiff's Family and Medical Leave Act (FMLA) Claim

In this case, Plaintiff Wharton missed several days of work in March 2007 because she

contracted shingles. [Wharton Aff., Doc. 38-1 at 4; Barkett Aff., Doc. 38-2.] The Plaintiff says that

these absences should have been protected under the Family and Medical Leave Act, but that the

Defendant used these absences as a "negative factor" in deciding to give her a reduced salary raise

in July 2007. [Doc. 1 at 11.]   The Plaintiff also alleges that the Defendant interfered with the

Plaintiff's rights under the FMLA because the Defendant improperly reduced the amount of her

annual "profit sharing bonus" based upon her attendance record.[1]  [Doc. 46.] During the pendency

of this lawsuit, the Defendant has retroactively reclassified the Plaintiff's March 2007 absences as

FMLA leave and has paid the Plaintiff a $490 increase in her profit-sharing bonus. [Wilkins Dec.,

Doc. 33-7 at 1-2; Wilkins Supp. Dec., Doc. 42-1 at 1-2.]

The Court notes at the outset that the Defendant's attempts to cure their alleged FMLA

violations by retroactively converting Plaintiff Wharton's March 2007 absences into FMLA-covered

leave and by increasing the amount of the Plaintiff's bonus do not render the Plaintiff's FMLA

interference claim moot.  The Plaintiff went at least eight months on a reduced salary due to the

---

[1] The Defendant asserts that the Plaintiff's claim regarding the "profit sharing bonus" is untimely because it was not specifically raised in her complaint. [Doc. 42.]  The Plaintiff, however, argues in her surreply that she did not discover that the Plaintiff's attendance was the sole criterion affecting the amount of her profit-sharing bonus until the Defendant filed its reply, with accompanying supplemental declarations, on February 25, 2008.  [Doc. 46.] Because the Plaintiff's FMLA interference claim broadly challenges the Defendant's decision as to the amount of compensation paid to the Plaintiff in 2007, the Court finds that the profit-sharing bonus is properly included in this claim and will address the issue on the merits.

Case No. 1:07-CV-2570
Gwin, J.

Defendant's alleged penalization of the Plaintiff for taking FMLA-qualifying leave.[2]  Further, the Plaintiff has alleged that she was denied a full salary raise primarily due to her work absences in March 2007.  Even though the Defendant has now reclassified those absences as FMLA-qualifying, the Defendant has not completely adjusted the Plaintiff's salary.  The Defendant therefore allegedly continues to interfere with the Plaintiff's rights under the FMLA and the case presents an active controversy for this Court to resolve.

Under the Family and Medical Leave Act ("FMLA"), an eligible employee is entitled to twelve weeks of unpaid leave during any twelve month period for a serious health condition that makes the employee unable to perform the functions of her job.  29 U.S.C. § 2611, *et seq.*  The statute defines "eligible employee" as an employee who has been employed for at least twelve months by the employer and has performed at least 1,250 hours of service for the employer during the previous 12-month period.  § 2611(2)(A)(i),(ii).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  *See Wysong v. Dow Chem. Co.,* 503 F.3d 441, 446 (6th Cir. 2007) (citing 29 U.S.C. § 2611(11)).  Any eligible employee who takes FMLA leave is, upon return from such leave, entitled to be restored to her position of employment or to an equivalent position. § 2614(a)(1).  Employers may

---

[2]  In *Burlington Northern*, the Supreme Court held that the fact that an employer later reinstated with back pay a worker who had previously been suspended  for 37 days without pay did not preclude the employee from receiving compensatory damages under Title VII. *Burlington Northern & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2417 (2006). The Court further held that the issue of whether the suspension was still a materially adverse employment action, despite the employer's later attempt to remedy the violation, was a question for the jury because "[m]any reasonable employees would find a month without a paycheck to be a serious hardship." *Id.* at 2417-18.  Similar logic applies to the Plaintiff's FMLA claim in this case.  Plaintiff Wharton's salary and profit-sharing bonus were admittedly reduced between July 2007 and January 2008 due to the Defendant's failure to classify her leave as covered by the FMLA and thus the interference with her FMLA rights was ongoing during this period.

Case No. 1:07-CV-2570
Gwin, J.

not "interfere with, restrain, or deny the exercise of" any right under the FMLA. § 2615(a)(1). Nor may employers "discharge or in any other manner discriminate against any individual for opposing" practices made unlawful by the FMLA. § 2615(a)(2).

The Sixth Circuit has recognized two possible theories of recovery under the FMLA: the interference theory under 29 U.S.C. § 2615(a)(1), and the retaliation theory under 29 U.S.C. § 2615(a)(2). *Wysong,* 503 F.3d at 446 (citing *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 507 (6th Cir. 2006)). In this case, Plaintiff Wharton seeks to recover from the Defendant for their alleged interference with her FMLA rights. The interference theory of recovery under the FMLA bars employers from engaging in actions that impede the exercise of their FMLA rights. *Id.* at 446-47.

To establish a claim for interference with rights under the FMLA, the Plaintiff must establish by a preponderance of the evidence that (1) she is an eligible employee, (2) the Defendant is an employer subject to the FMLA, (3) the Plaintiff was entitled to FMLA leave, (4) the Plaintiff gave the Defendant notice of her intention to take FMLA leave, and (5) the Defendant denied the Plaintiff's FMLA benefits or "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." *Wysong,* 503 F.3d at 447 (citing *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004)). *See also Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003). The Department of Labor has established that employers "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Similarly, the Sixth Circuit has explained, "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong,* 503 F.3d at 447.

-9-

Case No. 1:07-CV-2570
Gwin, J.

The Plaintiff satisfies the first three prongs of the prima facie case for interference with her FMLA rights. The parties do not dispute the fact that Plaintiff Wharton is an "eligible employee" under the FMLA or that Defendant Gorman-Rupp Company is a covered "employer" under the statute. The Defendant does not admit that the Plaintiff is entitled to FMLA leave, but it has now retroactively reclassified her absences as FMLA qualified anyways.[3]  In any event, the Plaintiff suffered from shingles during the last two weeks of March 2007. [Wharton Aff., Doc. 38-1 at 4; Barkett Aff., Doc. 38-2.] She was unable to work for an entire week and received continuing medicinal treatment from her physician, Dr. Barkett, during this period of time. This illness appears to qualify as a "serious health condition" warranting FMLA coverage and the Defendant does not present any evidence to suggest otherwise. *See* 29 U.S.C. § 2611(11); *Wysong,* 503 F.3d at 446; 29 C.F.R. § 825.114(b) (stating that a regimen of prescription medication satisfies the "continuing treatment" requirement under the FMLA).

The Defendant argues that the Plaintiff fails to satisfy the fourth prong of an FMLA interference claim, however, because she did not give the Defendant explicit notice of her intention to take FMLA leave.  An employee, however, "need not invoke the FMLA by name in requesting leave for an FMLA-qualifying reason." *Plant v. Morton Intern., Inc.,* 212 F.3d 929, 935 (6th Cir. 2000) (citing 29 C.F.R. § 825.208(a)(2)). The employee must merely inform her employer of the

---

[3]  The Court finds somewhat confusing the Defendant's decision to retroactively classify the Plaintiff's 2007 absences as FMLA leave. Rather than maintain its stance that the Plaintiff's absences were not FMLA-qualifying events, the Defendant has now wavered from that position and may have in fact estopped itself from denying that the Plaintiff was entitled to such leave in the first place. Department of Labor regulations for the FMLA state that "[i]f the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility." 29 C.F.R § 825.110(d). *See also Mutchler v. Dunlop Mem'l Hosp.,* 485 F.3d 854, 859-61 (6th Cir. 2007).  Because the Court finds that the Plaintiff's FMLA interference claim survives summary judgment on independent grounds, however, the Court declines to address the issue as to whether the Defendant is estopped from arguing that Plaintiff Wharton is not entitled to FMLA leave.

Case No. 1:07-CV-2570
Gwin, J.

nature of the leave requested and provide information to the employer "sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 488 (6th Cir. 2005)* (citing *Brohm v. JH Props., Inc.,* 149 F.3d 517, 523 (6th Cir.1998)).  "[I]f the employer feels it does not have sufficient information to determine whether the employee's reasons for requesting leave are encompassed by the FMLA, 'the employer should inquire further of the employee . . . to ascertain whether the paid leave is potentially FMLA-qualifying'." *Plant,* 212 F.3d at 935 (citing 29 C.F.R. § 825.208(a)).

Here, Plaintiff Wharton informed her supervisor, Craig Redmond, that she had shingles, was on prescription medication to treat the condition, and needed to take time off of work.  [Wharton Aff., Doc. 38-1 at 4; Redmond Dep., Doc. 39-1 at 22.]  Redmond did not report the Plaintiff's illness to the human resources department.  [Redmond Dep., Doc. 39-1 at 22.]  No Gorman-Rupp supervisors followed up or inquired further with the Plaintiff to obtain additional details about her illness.  The Court therefore finds that the Plaintiff's communication with Redmond raises a sufficient factual issue regarding whether she reasonably apprised the Defendant of her request to take time off of work for a serious health condition under the FMLA, and it was the Defendant's obligation to inquire further at that time if it doubted that the Plaintiff's leave was FMLA-qualifying.

Further, the Court finds that the Plaintiff offers sufficient evidence to escape summary judgment with regards to the fifth and final element of her claim for interference with rights under the FMLA by showing that the Defendant "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." *Wysong,* 503 F.3d at 447.  Here, the Defendant has admitted that the amount of the Plaintiff's profit-sharing bonus was reduced because her absences were not classified as FMLA-qualifying. [Wilkins Supp. Dec., Doc. 42-1 at 1-2.]

Case No. 1:07-CV-2570
Gwin, J.

Further, the Defendant denied the Plaintiff a full salary increase, at least in part, because of her absences from work.

The Defendant maintains that the Plaintiff would not have been granted a full salary increase even if she had not taken any FMLA leave because she suffered from numerous other work performance problems, including typing errors, improper processing of documents, and lack of cooperation with coworkers. [Doc. 39-1 at 15-16.] The Defendant says that the Plaintiff had been repeatedly criticized for these performance-related problems over the past several years and that, independent of her absenteeism, it would still deny her the full salary raise.

The Court finds, however, that the Plaintiff has presented a genuine issue of material fact as to the Defendant's use of FMLA-qualifying leave as a negative factor in evaluating the amount of her salary increase in June 2007.  In the performance deficiency memo provided to the Plaintiff on June 28, 2007, her supervisor, Craig Redmond, listed the reasons why the Plaintiff's July 1, 2007 pay increase would only be $50, instead of $100, per month. [Doc. 39-1 at 15-16.]  The very first item on the list of reasons for denying the Plaintiff a full salary increase is: "1. Attendance – My records show over 120 hours missed under codes 910 (Absent) and 995 (Late/Leave Early) since 7/1/06 . . ." *Id.*  The Defendant used the Plaintiff's absences from work in 2007, many of which should have been classified as FMLA leave, as one of the factors to deny the Plaintiff her full salary increase.

Additionally, the Defendant says that Plaintiff Wharton's work performance problems existed long before she took FMLA leave and that these problems constituted independent reasons to deny her the full salary increase.  The record shows that the Plaintiff was indeed criticized for many of the same work performance problems in 2005 and 2006 as she was in 2007.  [Doc. 39-1 at

-12-

Case No. 1:07-CV-2570
Gwin, J.

12-16.]  This argument, however, actually supports the Plaintiff's claim that the Defendant wrongfully used her FMLA-covered absences to deny her a full raise in June 2007.  The evidence suggests that the only substantive difference between the Plaintiff's 2005 and 2007 performance reviews is that the Plaintiff was criticized for her FMLA absences in the latter evaluation.  Despite her alleged similar work performance problems, the Plaintiff received a 4.49% salary increase on July 1, 2005 and a 4.94% salary increase on July 1, 2006. [Wharton Aff., Doc. 38-1 at 7.] On July 1, 2007, however, she only received a 2.04% salary increase.  *Id.*  This evidence raises a genuine issue of material fact because a jury could reasonably find that the Defendant thus used the Plaintiff's FMLA leave against her, at least in part, in making its salary decisions in 2007.

The Court therefore must deny summary judgment to the Defendant on the Plaintiff's FMLA interference claim.

### B. The Plaintiff's Fair Labor Standards Act ("FLSA") Claim

Plaintiff Wharton says that she is entitled to wages owed for approximately 200 hours of unpaid overtime work under the Fair Labor Standards Act of 1938, found at 29 U.S.C. § 201, *et seq.* The Plaintiff claims she worked as an Engineering Coordinator, a non-exempt salaried position, and she worked overtime for approximately five hours per week between August 2005 and May 2007.

The Fair Labor Standards Act requires that an employer compensate an eligible employee who works over forty hours in a week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employee may prove a cause of action for unpaid overtime compensation by showing by a preponderance of the evidence that "(1) there exists an employer-employee relationship; (2) there was an engagement in activities within coverage of the FLSA; and (3) the defendant failed to pay the plaintiff the overtime pay required by law."

Case No. 1:07-CV-2570
Gwin, J.

*Kowalski v. Kowalski Heat Treating Co.,* 920 F.Supp. 799, 806 (N.D. Ohio 1996).  In establishing the third prong of this test, the employee bears the burden of proving that she "performed work for which [she] was not properly compensated." *Myers v. Copper Cellar Corp.,* 192 F.3d 546, 551 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*).  A plaintiff usually can satisfy this burden through the production of the employer's statutorily required records of employee hours.  *Id.*  "However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate."  *Id.*  In situations where the employer has kept inadequate time records, the Supreme Court has held that an employee carries his burden of establishing a prima facie case "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687.

In this case, Plaintiff Wharton says that she has presented records showing that she worked nine hours of unpaid overtime between October 29, 2006 and January 5, 2007.  In her affidavit, she also recalls working overtime approximately five hours per week during 33 different weeks between August 2005 and May 2007 without compensation.  None of these overtime hours are reflected on the employee attendance records or in the self-reported time sheets that the Plaintiff submitted to Defendant Gorman-Rupp Company. [Doc. 38-1 at 8-34.] Rather, the Plaintiff's evidence comes solely from her own undated handwritten notes and affidavit.  *Id.* at 5-7, 10-11.

In order to succeed on her FLSA claim, Plaintiff Wharton needs to show that the overtime work she allegedly performed was done with her employer's knowledge.  Pursuant to Department

-14-

Case No. 1:07-CV-2570
Gwin, J.

of Labor regulations, "Work not requested but suffered or permitted is work time" and if "[t]he employer knows or has reason to believe that" an employee "is continuing to work," then "the time is working time." 29 C.F.R. § 785.11.  *See also Wood v. Mid-America Management Corp.,* 192 Fed. Appx. 378, 380 (6th Cir. 2006).  The Sixth Circuit has held that, while an employee must be paid for overtime work, even if the employer did not explicitly ask the employee to work those hours, "this requirement applies only if 'the employer "knows or has reason to believe that the employee is continuing to work . . ." *Id.* (citing *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 718 (2nd Cir. 2001)).

Even if the Court were to believe that the Plaintiff logged hundreds of hours of unpaid overtime work between August 2005 and May 2007, the Plaintiff fails to satisfy her prima facie case of proving unpaid overtime work under the FLSA because she presents no evidence that the Defendant was aware that she was working overtime hours.  As a non-exempt salaried employee, Plaintiff Wharton was expected to work from 8 AM until 5 PM every weekday, with an hour-long lunch break.  [Wharton Dep., Doc. 33-3 at 3.] She was expected to record any deviation from that established schedule on her self-reported attendance sheets.  *Id.* The record does not show any instance in which the Plaintiff reported any overtime hours on her employee time sheets between August 2005 and May 2007.  [Doc. 38-1 at 8-34.]

Plaintiff Wharton testified that she personally wrote out her own time records and entered all time records for her department into the Defendant's computer system as part of her job responsibilities.  [Wharton Dep., Doc. 33-3 at 3.] The Plaintiff also testified that she could not recall any instance in which she recorded her alleged overtime work on her time records.  *Id.* at 4.  The time sheets that the Plaintiff submitted to her supervisor explicitly contain a warning that says in

Case No. 1:07-CV-2570
Gwin, J.

bold font, "NOTE: Record all hours of authorized overtime."  [Doc. 38-1 at 8-34.] The forms also

contain a section in which the employee is supposed to list all "Authorized Hours of Overtime Pay

this Month."  *Id.* This section is blank on all of the Plaintiff's time sheets that have been submitted

to this Court.

> The Sixth Circuit has held:
>
> At the end of the day, an employee must show that the employer knew or should
> have known that he was working overtime or, better yet, he should report the
> overtime hours himself. Either way, the employee bears some responsibility for the
> proper implementation of the FLSA's overtime provisions. An employer cannot
> satisfy an obligation that it has no reason to think exists. And an employee cannot
> undermine his employer's efforts to comply with the FLSA by consciously omitting
> overtime hours for which he knew he could be paid.

*Wood,* 192 Fed. Appx. at 381.  In her opposition to summary judgment, the Plaintiff correctly notes

the legal standard for an employer's knowledge of unpaid overtime work but fails to make any

argument that the Defendant was aware that the Plaintiff was routinely coming into work early,

working through her lunch break, or staying late during the relevant time period.  In her deposition,

the Plaintiff says that the Defendant knew about her overtime work. [Wharton Dep., Doc. 33-3 at

4.] There is no evidence in the record, however, supporting such an assertion.

Further, even if this Court were to assume that the Defendant knew about the Plaintiff's

overtime work and kept inaccurate time records, the Plaintiff's claim still fails under the relaxed

"just and reasonable inference" standard.  The Defendant correctly notes that the FLSA only applies

to overtime work performed in excess of 40 hours per week, not 8 hours per day.  The Plaintiff's

own handwritten time records, which are the only concrete evidence of any overtime worked,

contradict her claims that she is entitled to overtime pay.  As the Defendant has pointed out, for

nearly all of the specified weeks in which the Plaintiff claims she worked overtime, the Plaintiff's

Case No. 1:07-CV-2570
Gwin, J.

use of vacation and/or sick time exceeded her alleged overtime, thus resulting in the Plaintiff's total number of hours worked per week falling below the 40-hour threshold. [Doc. 33 at 9-10.]

The Court therefore grants summary judgment to the Defendant on the Plaintiff's Fair Labor Standards Act claim.

### C. The Plaintiff's State Law Claims

In her complaint, the Plaintiff also raises several state law claims against the Defendant for (1) age discrimination; (2) retaliation for complaining about age discrimination; (3) retaliation for complaining about sex discrimination; and (4) two counts of invasion of privacy. [Doc. 1.] Because this Court has concluded that the Plaintiff's federal FMLA claim survives summary judgment, the Court has original federal question jurisdiction. The Plaintiff's state law claims are so related to the federal claims previously addressed by this Court that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Accordingly, the Court will exercise supplemental jurisdiction over the Plaintiff's state law claims and therefore **DENIES** the Defendant's motion to dismiss for lack of jurisdiction.

The Court addresses the merits of each of the Plaintiff's state law claims in turn.

### 1. Age Discrimination under Ohio Rev. Code § 4112

Plaintiff Wharton brings an age discrimination claim against the Defendant under Ohio law. Ohio Rev. Code § 4112.14(A). She alleges that she was denied the Executive Administrative Assistant position because of her age. Wharton, who was 58 years old at the time, says that Lee Wilkins, a member of the hiring committee, informed her, "We were looking down the road, we wanted longevity" and purportedly asked the Plaintiff how much longer she had to work before she could retire. [Wharton Aff., Doc. 38-1 at 1-2.] Susie Beckwith, a 49-year old Gorman-Rupp

-17-

Case No. 1:07-CV-2570
Gwin, J.

employee who was similarly not selected for the Executive Administrative Assistant position, says that Wilkins also told her that she did not receive the job because the Defendant was looking for an employee "with longevity." [Beckwith Dep., Doc. 39-4 at 11.] The Plaintiff further asserts that the Gorman-Rupp hiring committee improperly considered the number of years that each applicant spent in the workforce as a proxy for age in evaluating their applications. [Pl. Ex. G, Doc. 39-6 at 8-9.]

Ohio law prohibits employers from discriminating "in any job opening against any applicant . . . aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Ohio Rev. Code § 4112.14(A). Age discrimination claims brought under state law are generally analyzed under the same framework as claims raised under the federal Age Discrimination in Employment Act (ADEA). *See Minadeo v. ICI Paints,* 398 F.3d 751, 763 (6th Cir. 2005). A plaintiff can establish a prima facie case of age discrimination either by providing direct evidence of discrimination or by proving a prima facie case under the *McDonnell Douglas* tripartite test. *Id.*

### i. Direct Evidence of Age Discrimination

The Plaintiff says that Wilkins' comments as to the effect that she did not receive the executive administrative position because the company wanted to select someone with "longevity" constitute direct evidence of age discrimination in violation of Ohio law. The Plaintiff also says that a spreadsheet designed by Judith Sovine, one of the members of the hiring committee, listed each applicant's number of years in the workforce, and the Plaintiff argues that this data is an

Case No. 1:07-CV-2570
Gwin, J.

impermissible proxy for age. [Pl. Ex. G, Doc. 39-8 at 8.][4/]  Direct evidence "proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 523 (6th Cir. 2007) (internal citation omitted).  The Sixth Circuit requires "some degree of connection between the comments and the relevant decision if the comments are to be considered even as *circumstantial* evidence of discrimination." *Id.* at 525.  Similarly, the Ohio Supreme Court has held:

> There must be a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination to establish a violation of the statute. . . Therefore, we hold that, in a cause of action for age discrimination under R.C. 4112.02 or 4112.14, when relying upon the direct evidence standard . . . an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation.

*Byrnes v. LCI Comm. Holdings Co.,* 672 N.E.2d 145, 149 (Ohio 1996).  Ohio courts interpret this direct evidence standard "to mean that the statement must be a statement by a decisionmaker. 'There is a vital difference between comments which demonstrate a discriminatory animus in the decisional process and stray remarks made by nondecisionmakers.'" *Coburn v. Rockwell Automation, Inc.,* 238 Fed. Appx. 112, 118 (6th Cir. 2007) (citing *Molnar v. Klammer,* 2005 WL 3528870, at *4 (Ohio Ct. App. 2005)).

In evaluating the Defendant's motion for summary judgment, the Court must assume that the facts as alleged by Plaintiff are true and therefore must assume that Wilkins made the previously mentioned age-biased comments to the Plaintiff.  The Court finds, however, that Plaintiff Wharton has failed to show that there was a causal connection between Wilkins' age-biased comments and Kirkendall's decision not to hire the Plaintiff.  Although Wilkins was a member of the hiring

---

[4/] Although the Plaintiff classifies this spreadsheet as circumstantial evidence of age discrimination, such documentation is in fact direct evidence because, if believed, it "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Skelton v. Sara Lee Corp.,* 249 Fed. Appx. 450, 454 (6th Cir. 2007) (citing *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)).

Case No. 1:07-CV-2570
Gwin, J.

committee, the record reflects that his opinion did not ultimately control, or even significantly

influence, which applicant was selected to fill the administrative assistant position. Rather, Wilkins,

along with the other members of the hiring committee, helped to create the job description, select

which applicants would be interviewed, participate in the interviews, and make a recommendation

to the final decision-maker, Robert Kirkendall, the Senior Vice President and Chief Financial Officer

of Gorman-Rupp. [Wilkins Dep., Doc. 39-2 at 26-30; Wilkins Decl., Doc. 33-7 at 2-4.]

Under the hiring criteria that Wilkins himself helped to develop, Plaintiff Wharton was

granted a first-round interview.  All of the hiring committee members testified that Plaintiff

Wharton's performance during her interview was underwhelming and that she was not nearly as

well-qualified as several of her fellow applicants.  Each hiring committee member independently

ranked Sherri Green and Brenda Young as their top two choices to receive a second-round interview

and also ranked Plaintiff Wharton near the bottom of the list.  [Wilkins Decl., Doc. 33-7 at 3–4;

Kirkendall Decl., Doc. 33-10; Danuloff Decl., Doc. 33-11; Sovine Decl., Doc. 33-12.]

Further, the record shows that Kirkendall was the sole decision-maker as to which applicant

was ultimately selected for the Executive Administrative Assistant position. [Kirkendall Decl., Doc.

33-10 at 1.] The Plaintiff has presented no evidence – direct or otherwise – that Kirkendall was

motivated by age bias in any way.  Therefore, even if this Court were to believe that Wilkins truly

wanted to hire an applicant based on "longevity," the evidence shows that Wilkins' opinion as to

which employee to hire was largely irrelevant in the actual decision-making process.  The Plaintiff

has thus failed to demonstrate the requisite nexus between Wilkins' statements regarding

"longevity" and Kirkendall's ultimate decision not to hire the Plaintiff for the executive assistant

position.

-20-

Case No. 1:07-CV-2570
Gwin, J.

The Plaintiff similarly fails to demonstrate the required nexus for her claim that the hiring committee used a spreadsheet containing data regarding "the total working years . . . that the individual has worked" as a mere proxy for considering age in evaluating applicants.  [Sovine Dep., Doc. 39-6 at 27; Pl. Exhibit G, Doc. 39-6 at 8.]

This Court concludes that the "years of work" column in the spreadsheet created by Sovine, while likely correlated to the age of the various applicants, is not necessarily age-based because older workers, like the Plaintiff, may have entered the workforce later in life and would have correspondingly fewer years of work experience listed in the spreadsheet. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611 (1993).  More importantly, the Plaintiff does not present any evidence that the spreadsheet actually influenced the decision-making process.  The "years of work" column was not used to screen which candidates received interviews; rather, Danuloff and Sovine testified that it was merely a compilation of information gathered from the various candidates' resumes that had already been selected for first-round interviews. [Sovine Dep., Doc. 39-6 at 27-28; Danuloff Dep., Doc. 39-12 at 21.] During his deposition, Kirkendall similarly testified:

> Q:  Did you use this spreadsheet when you were interviewing a candidate to get information about that candidate?
> A:  No.  No, I did not.
> Q:   When you were making the decisions regarding who to offer a position to or who would be called back for a second interview, did you use the spreadsheet?
> A:  No.

[Kirkendall Dep., Doc. 39-11 at 22.]

The Court therefore concludes that the spreadsheet used by the hiring committee fails to constitute direct evidence of age discrimination sufficient to survive summary judgment.

### *ii. Indirect Evidence of Age Discrimination*

The Plaintiff also vaguely alleges that she has presented indirect evidence of age

Case No. 1:07-CV-2570
Gwin, J.

discrimination in this case. Indirect or circumstantial evidence is evaluated under the *McDonnell Douglas* burden-shifting test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

To prove a prima facie case of age discrimination under the *McDonnell Douglas* analysis, a plaintiff must show: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she "was either replaced by a substantially younger person, or was treated less favorably than a similarly situated employee from outside the protected class." *McElroy v. Philips Med. Sys. N.A., Inc.,* 127 Fed. Appx. 161, 166 (6th Cir. 2005). The Sixth Circuit has explained, "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of [an employee outside the protected class], the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Minadeo,* 398 F.3d at 764 (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992))

In this case, the Plaintiff easily satisfies the first three prongs of the prima facie case. As a 58-year old applicant, Plaintiff Wharton was a member of the protected class. She suffered an adverse employment action when she was not selected for the Executive Administrative Assistant position. There is some dispute as to whether the Plaintiff was qualified for the position, but at the prima facie stage, the plaintiff "need only present credible evidence that he was minimally qualified in the relevant field." *Coburn,* 238 Fed. Appx. at 128. The Plaintiff appears to meet this minimal qualification threshold because she had significant work experience as an employee with the Defendant.

The Plaintiff fails to prove, however, that she was treated differently during the application process than any similarly situated employees outside of the protected class. While it is true that the

Case No. 1:07-CV-2570
Gwin, J.

Defendant hired a younger employee, 31-year old Sherri Green, to fill the Executive Administrative Assistant position, the Plaintiff presents no evidence that she was similarly situated to Green or any other applicant for the position. In fact, the record indicates that the Plaintiff had significantly less administrative experience than nearly every other applicant that received an interview, including Green; possessed less computer skill expertise; and did not perform as well in her interview. [Pl. Ex. G, Doc. 39-8 at 8; Wilkins Decl., Doc. 33-7 at 3–4; Kirkendall Decl., Doc. 33-10; Danuloff Decl., Doc. 33-11; Sovine Decl., Doc. 33-12.] The Plaintiff makes no argument that she was similarly situated in all material respects to the two job applicants that received second-round interviews and consequently does not prove a prima facie case of age discrimination. The Court thus grants summary judgment to the Defendant on the age discrimination claim.

### 2. Retaliation for Complaining About Alleged Age and Sex Discrimination

Plaintiff Wharton also says that she was wrongfully retaliated against by the Defendant for complaining about age and sex discrimination.[5/] Ohio Rev. Code § 4112.02(I) states that it is unlawful to discriminate against a person on the grounds that they have "opposed any unlawful discriminatory practice . . ." *Id.* Retaliation claims based on circumstantial evidence, as in this case, are analyzed under the *McDonnell Douglas* test described above. *See Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 544 (6th Cir. 2008); *Minadeo,* 398 F.3d at 763.

To establish a prima facie retaliation claim, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew about the protected activity, (3) the employer discriminated against the employee in a materially adverse way, and (4) there was a causal

---

[5/] The Plaintiff does not distinguish between her age discrimination retaliation claim and her sex discrimination retaliation claim. Because both claims are analyzed under the same legal standard and arise out of the same set of facts, the Court will address the claims jointly.

-23-

Case No. 1:07-CV-2570
Gwin, J.

connection between the protected activity and the adverse action. *Imwalle,* 515 F.3d at 544 (internal

citation omitted).  "The burden of establishing a prima facie case in a retaliation action is not

onerous, but one easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). The

Supreme Court has recently noted that the anti-retaliation provision of Title VII "protects an

individual not from all retaliation, but from retaliation that produces an injury or harm. . . [A]

plaintiff must show that a reasonable employee would have found the challenged action materially

adverse, 'which in this context means it well might have dissuaded a reasonable worker from making

or supporting a charge of discrimination.'" *Burlington Northern,* 126 S. Ct. at 2414-15 (internal

citations omitted).

In this case, Plaintiff Wharton says that the Defendant engaged in retaliatory acts against her

when it gave her a performance deficiency notice and reduced raise; when her supervisor, Craig

Redmond, subjected her to overly intrusive scrutiny; and when Wilkins taunted and cursed at her.

The Plaintiff easily satisfies the first two prongs of the prima facie test. With the Defendant's

knowledge, the Plaintiff engaged in protected activity by reporting the alleged discriminatory acts

to Gorman, contacting a lawyer, and filing this employment discrimination lawsuit.

Further, the Plaintiff shows that the June 2007 performance deficiency notice was an adverse

employment action because it resulted in a reduced raise on July 1, 2007. The Plaintiff has not

sufficiently demonstrated, however, that Redmond's increased documentation of her work or

Wilkins' occasional insults are materially adverse employment actions.  Anti-retaliation provisions

do not protect against "those petty slights or minor annoyances that often take place at work and that

all employees experience. *Burlington Northern,* 126 S. Ct. 2405 at 2415. Redmond's allegedly

constant note-taking and Wilkins' stray comments, even if insulting, fail to rise to the level of

Case No. 1:07-CV-2570
Gwin, J.

severity required to constitute behavior that would deter an employee from reporting discrimination.

The only allegedly retaliatory action that proceeds to the fourth prong of the prima facie case then is the June 2007 performance deficiency notice. The Sixth Circuit has stated, "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. " *Nguyen,* 229 F.3d at 563. To show a causal connection, a plaintiff usually must show temporal proximity coupled with other indicia of retaliatory conduct. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th Cir.2001). In this case, Plaintiff Wharton has shown the necessary "causal connection" between the Plaintiff's protected activity and the Defendant's adverse employment action because the Defendant gave her the deficiency notice only three weeks after her lawyer contacted the Defendant regarding her possible lawsuit. This evidence, coupled with the other indicia of retaliation previously discussed in this opinion, such as the heightened scrutiny by which Redmond observed the Plaintiff after she filed her lawsuit, is sufficient to prove a prima facie case of retaliation for complaining about sex and age discrimination.

The Plaintiff's longstanding work performance deficiencies already detailed in this opinion, however, constitute legitimate, nondiscriminatory reasons for giving the Plaintiff a negative performance review in June 2007. Most of these genuine work-related criticisms were documented in the Plaintiff's 2005 and 2006 performance reviews, long before the Plaintiff reported any sex or age discrimination to the Defendant. [Doc. 39-1 at 12-16.]

The burden then returns to the Plaintiff to put forth enough evidence to present a genuine issue of material fact as to whether the Defendant's proffered reason is a pretext for retaliation. In

Case No. 1:07-CV-2570
Gwin, J.

order to show that a defendant's stated reasons are a pretext for retaliation, a plaintiff must submit

evidence that the given reason (1) had no basis in fact; (2) did not actually motivate the defendant's

conduct; or (3) was not enough to warrant the challenged acts. *Wexler*, 317 F.3d at 594. Here, the

Plaintiff fails to carry this burden. The Plaintiff admits that the documented criticisms of her work

in June 2007, such as a lack of attention to detail, were also found in her evaluations written by

multiple supervisors years before she complained of discrimination. [Wharton Dep., Doc. 33-5 at

322-35.]

The Court grants summary judgment to the Defendant on the Plaintiff's retaliation claims.

### 3. Invasion of Privacy

The Plaintiff asserts two invasion of privacy claims against the Defendant. First, she argues

that the Defendant invaded her privacy by wrongfully publicizing private information when Wilkins

told other co-workers that the Plaintiff was receiving counseling through the Employee Assistance

Program. Second, the Plaintiff says that the Defendant invaded her privacy by wrongfully intruding

into her seclusion when Cheryl Pfeifer, the Benefits Manager for the Defendant, called the

counseling service and inquired as to the content of the Plaintiff's counseling sessions.

### i. Public Disclosure of Private Facts

To establish a claim for invasion of privacy by publication of private facts, a plaintiff must

prove five elements:

> (1) There must be publicity; the disclosure of a public nature, not private. 'Publicity'
> means communicating the matter to the public at large, or to so many persons that
> the matter must be regarded as substantially certain to become one of public
> knowledge as opposed to 'publication' as that term of art is used in connection with
> liability for defamation as meaning any communication by the defendant to a third
> person.
> (2) The facts disclosed must be those concerning the private life of an individual, not
> his public life. . .

Case No. 1:07-CV-2570
Gwin, J.

     (3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.
     (4) The publication must have been made intentionally, not negligently.
     (5) The matter publicized must not be a legitimate concern to the public. A newspaper's publicizing "legitimate news" ordinarily will not be actionable.

*Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291, 1294-95 (Ohio 1985).

     Assuming that the facts as alleged by Plaintiff Wharton are true, Wilkins told two other Gorman-Rupp employees, Cheryl Pfeifer and Cheryl Oswalt, that the Plaintiff was receiving counseling.  This action fails to satisfy the "publicity" requirement for a public disclosure of private facts claim, however, because communicating information to two people individually is not enough for the matter to be regarded as "substantially certain to become one of public knowledge." *Killilea, 499 N.E.2d at 1294-95*.  The Sixth Circuit has held that "it is not an invasion of privacy to disclose an embarrassing fact to a single person or even a small group of persons." *Yoder v. Ingersoll-Rand Co., 172 F.3d 51, at *3 (6th Cir. 1998)* (table).  The Plaintiff has not presented evidence that any other Gorman-Rupp employees besides Pfeifer and Oswalt were informed that she was seeking counseling due to Wilkins' disclosure, let alone that the matter became one of "public knowledge" prior to the filing of this lawsuit.

     Further, and more importantly, the Plaintiff has failed to demonstrate the existence of any "private" facts that Wilkins wrongfully revealed.  Plaintiff Wharton herself voluntarily revealed to Wilkins that she was receiving counseling.  The Supreme Court of Ohio has held that a defendant cannot be liable for merely giving "further publicity to information about the plaintiff that is already public" or for spreading information about "matters that the plaintiff leaves open to the public eye." *Killilea, 499 N.E.2d at 1294-95*.  Here, the Plaintiff herself testified that she did not reveal a secret to Wilkins or tell him anything that she did not want him know when she informed him that she had

Case No. 1:07-CV-2570
Gwin, J.

been seeking counseling. [Wharton Dep., Doc. 33-5 at 287-88.]

The Plaintiff thus fails to show a prima facie case for invasion of privacy by public disclosure of private facts and the Court thus grants summary judgment to the Defendant on the claim.

### ii. Intrusion into Private Affairs

The tort of unreasonable intrusion into one's private affairs provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to the liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Sustin v. Fee*, 431 N.E.2d 992, 993-94 (Ohio 1982) (citing Restatement (Second) of Torts § 652B). In order to prove an invasion of privacy claim for wrongful intrusion, a plaintiff must show that the intrusion is "of such a character as would shock the ordinary person to the point of emotional distress." *Huntington Center Assocs. v. Schwartz, Warren & Ramirez,* 2000 WL 1376524, at *5 (Ohio Ct. App. 2000) (citing *Haller v. Phillips,* 591 N.E.2d 305, 307 (Ohio Ct. App. 1990)). The same legal standard for intentional infliction of emotional distress claims is applied to wrongful intrusion claims. *See Stonum v. U.S. Airways, Inc.,* 83 F.Supp.2d 894, 905 (S.D. Ohio 1999) (citing *Haller,* 591 N.E.2d at 307).

In this case, the Plaintiff says that Pfeifer, acting as an agent for the Defendant, wrongfully intruded into her private affairs by calling the Employee Assistance Program and demanding to know about the content of the Plaintiff's counseling sessions. This Court finds that the Plaintiff has failed to demonstrate an intrusion into her private affairs that was so severe that it would shock or outrage a reasonable person. As noted above, the Plaintiff herself told the Defendant that she was receiving counseling due to age-related issues. [Wharton Dep., Doc. 33-4 at 258-261.] Further,

Case No. 1:07-CV-2570
Gwin, J.

Pfeifer's inquiry to the EAP was narrowly directed to the issue of whether the Plaintiff's counselor

was giving her legal advice to sue the Defendant for age discrimination. [Wagner Dep., Doc. 33-9

at 25-28.]  Dr. Wagner, the director of the EAP, testified that he and Pfeifer only spoke for "maybe

20 seconds" about the Plaintiff.  *Id.*  Pfeifer did not personally speak with the Plaintiff's counselor,

obtain any detailed information about the Plaintiff's counseling sessions or her personal life, or use

this information in any way to humiliate, outrage, or harm the Plaintiff.

The Plaintiff has thus failed to show that Pfeifer's phone call to Wagner was outrageous

enough to constitute a wrongful intrusion into private affairs under Ohio law, and the Court must

grant summary judgment to the Defendant on this claim.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** the Defendant's motion for summary

judgment as to the Plaintiff's FMLA claim and **GRANTS** the Defendant's motion for summary

judgment as to all other federal and state claims.

IT IS SO ORDERED.


Dated: April 9, 2008                              s/          *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE